HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERRIE L WILLIAMS, | CASE NO. C10-751 RBL |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, AMERICAN AIRLINES INC, AMERICAN AIRLINES INC LONG TERM DISABILITY PLAN TRUSTS, | |
| Defendant. | |

## I.   BACKGROUND

THIS MATTER is before the Court on administrative review.  Oral arguments were held on April 11, 2014.  After considering the parties' briefing, supporting evidence and the arguments of counsel, the Court finds for the Plaintiff and enters these Findings of Fact and Conclusions of Law.

## II.   FINDINGS OF FACT

1. Plaintiff Terrie Williams is a former American Airlines Flight Attendant who was based out of San Francisco International Airport.  She was hired in 1990 and her last day as a flight attendant was May 26, 2008.  During this time she was

enrolled in a long term disability plan (LTD).

2. The American Airlines Employee Benefit Guide for Flight Attendants contains the terms and conditions of LTD benefits. The Plan defines "total disability" as follows:

> During the elimination period and the first 24 months for which LTD benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for wage or profit and are unable to perform major and substantial duties of your own occupation because of sickness or accidental bodily injury.
>
> After 24 months for which LTD benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for any employer and are unable to perform major and substantial duties of any occupation or employment for wage or profit for which you have become reasonably qualified by training, education or experience.

3. Under the LTD Plan, benefits are paid entirely by employees who enroll in the program through payroll deductions with after-tax contributions. The Plan is administered by MetLife. MetLife does not pay any portion of the benefits or insure the payment of benefits. MetLife is paid a portion of fees from trust assets based on the Plan headcount and claim volume, not on the type of claim determinations that are made. Likewise, no one at the Pension Benefits Administration Committee (PBAC) is compensated by whether claims are made or not.

4. Under the Plan, employees whose LTD claims are denied have the right to a first-level review and a second-level appeal. First-level reviews are done by the claims processor, in this case, MetLife. Second level appeals are conducted directly by the PBAC.

5. While performing her duties as a Flight Attendant on April 11, 2007, jet oil leaked on to the plane's auxiliary processing unit causing smoke in the first class cabin of

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

the airplane. Williams was exposed to fumes during the incident.

6. As a result of the jet oil smoke exposure, Williams suffered pulmonary dysfunction and headaches. She was treated at San Francisco Medical Department. She was seen twelve days later at St. Francis Hospital complaining of breathing issues and headaches. Two days after that she was back at the Emergency Room complaining of worsening breathing issues and headaches.

7. Due to the migraine headaches and pulmonary dysfunction, Williams filed a workers' compensation claim. That claim was accepted by Specialty Risk Services (SRS).

8. Williams has never been cleared to return to her job as a flight attendant by her workers' compensation administrator and remained temporarily, totally disabled.

9. On May 29, 2008, after examining Williams, and listening to her account of her last trip, her treating physician, Dr. Bonauto, removed her from work. His notes from that encounter list Williams' impairments as: asthma, migraines, and anxiety. Dr. Bonauto believed that Williams was a threat to passenger safety due to the effects of these impairments.

10. Williams missed approximately 102 days of work between April 11, 2007, and April 14, 2008, and was paid total temporary disability payments from her third party workers' compensation administrator, SRS.

11. Williams applied for LTD benefits claiming that she was disabled from headaches that occurred 17-22 days a month and she was also disabled by a pulmonary condition reported as asthma.

12. As part of her claim Williams filled out a questionnaire addressing her work

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

duties and identifying her symptoms that precluded her from performing in her occupation.

13. MetLife denied Williams' application for benefits on October 10, 2008, because it claimed that it could not assess the severity of her symptoms. It reasoned that the diagnostic studies performed did not appear to support her reported symptoms. MetLife invited Williams to appeal that determination and provide additional medical documentation to support her disability claim.

14. Williams administratively appealed on January 8, 2009. She provided extensive medical records from her treating physicians, lay declarations from family, friends and coworkers, and copies of a Qualified Medical Examination (QME) by Dr. Jacqueline Weiss, who was hired by her third-party administrator of her workers' compensation claim.

15. Dr. Weiss confirmed Williams' diagnosis of migraine headaches following smoke inhalation. She concluded that Williams was temporarily, totally disabled from the job of flight attendant due to her incapacitating migraines. Dr. Weiss also noted that Williams' headaches had been difficult to treat with traditional medications.

16. MetLife sent Williams' file to Dr. Daniel Gerstenblitt, a doctor of occupational medicine, to review her record. Dr. Gerstenblitt reviewed the records and spoke with, Dr. Bonauto. Dr. Gerstenblitt believed that anxiety caused Williams' disability; Dr. Bonauto would not agree, believing that her disability arose from debilitating headaches. Dr. Gertenblitt concluded that Williams did not provide objective evidence that her migraine condition limited or restricted her ability to

work and that her disability arose because of an anxiety condition.

17. Dr. Gertenblitt's review was narrowly focused. His report states "[T]his review can only look at objective medical evidence and this reviewer cannot substantiate the need to support restrictions and limitation based simply on self reports. . . ." It is unclear what objective medical evidence Dr. Gertenblitt anticipated or required to substantiate the severity of Williams' migraine headaches.

18. Dr. Gertenblitt's report mistakenly states that "it appeared that she developed some headache disorder many months after the alleged exposure. This would lack a temporal relationship and would be difficult to support." This contravenes the medical history that he claims to have reviewed as part of his report.

19. Even though Dr. Gertenblitt's conclusions seemed to focus on anxiety rather than her migraine diagnosis, he did state, "[T]his reviewer does stress that I have concerns over safety in the workplace and of the people who are flying in the plane, as well as the individual herself, due to her subjective complaints and the numerous letters that were written on her behalf."

20. MetLife denied Williams' appeal on February 9, 2009, citing to its prior determination that they could not determine the severity of her migraines.

21. Williams, unaware of the denial, submitted additional evidence of her disability on February 10, 2009. This additional evidence raised questions regarding MetLife's ability to find Williams able to work as a flight attendant.

22. In response, MetLife sent a letter, dated February 18, 2009, stating that additional time was necessary and additional information needed to be submitted in order to conduct a full and fair review.

23. MetLife then retracted this letter and affirmed its second denial of Williams' claim.

24. Williams applied for Social Security Disability and on her initial application, received a favorable determination.

25. Williams underwent a neuropsychological examination with Dr. James Cole on June 3, 2009, as part of her ongoing worker's compensation claim. Dr. Cole concluded that Williams was not disabled by a psychiatric condition. His diagnosis was that her mental health condition of anxiety and depression was derivative to her physical condition, namely migraines. The examination found slowed processing, delayed response, reduced concentration believed to be caused by pain from headaches, medication effects, and sleep deprivation.

26. Williams administratively appealed MetLife's adverse determination to the PBAC. She submitted numerous medical records, QME examinations supporting disability from her job of flight attendant, the favorable Social Security determination, the neuropsychological report, numerous peer studies on the effects of neurotoxins, and the previous documentation sent to MetLife.

27. The PBAC sent Williams' file to a pulmonary specialist, Dr. Leonard Sonne, who reviewed the file and could not find any objective evidence of a disabling pulmonary condition.

28. The PBAC also sent Williams' file to a neurologist, Dr. Arousiak Varpetian. Dr. Varpetian emphasized the lack of objective evidence that the migraines restricted or limited her ability to work. He further expressed his belief that Williams suffered from a psychological condition despite the neuropsychological report to

the contrary.

29. The PBAC upheld MetLife's prior determination citing the lack of objective medical evidence that Williams' migraines restricted or limited her ability to work. In its letter to Williams, they invited her to file for a mental health claim erroneously believing that she could. The Plan, however, specifically requires claims to be filed within one year and the PBAC decision was nine months past that deadline.

30. Williams filed for judicial review on May 3, 2010.

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1331.

2. The Court reviews MetLife and the PBAC's decision for an abuse of discretion. The plan unambiguously provides the administrator with discretionary authority to make benefit determinations, and, thus, the applicable standard of review of those determinations is abuse of discretion. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006).

3. When determining whether there was an abuse of discretion, the Court considers whether the decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011)(internal quotation marks omitted). In evaluating the decision under the abuse of discretion standard, the Court examines the administrative record. *Bellaire General Hosp. v. Blue Cross*, 97 F.3d 822 (5th Cir. 1996).

4. The decision by MetLife and affirmed by the PBAC may be found to be an abuse

of discretion if it is not the product of a deliberate, principled reasoning process. *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009). A plan administrator abuses its discretion if it renders a decision without explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir.2005). Weighty evidence may ultimately be unpersuasive, but it cannot be ignored. *Salomaa,* 642 F.3d 666 at 679.

5. A plan administrator is not bound by the determination of Social Security, but complete disregard without explanation raises questions about whether the adverse benefits determination was the product of a principled and deliberative reasoning process. *Montour,* 588 F.3d at 635. Evidence of a Social Security award is significant enough that failure to address it offers support that the Plan's denial was arbitrary and an abuse of discretion. *Salomaa*, 642 F.3d at 679.

6. The claimant's physician is not required to be accorded any special weight and plan administrators do not have to explain when they credit reliable evidence that conflicts with a treating physician's evaluation. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003).   A plan administrator, however, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.  *Id*.

7. Further, the plan administrator may not pick and choose between portions of the medical record or ignore parts and use only those parts of the record which are favorable to a finding of no disability. *Solien v. Raytheon Long Term Disability*

*Plan # 590*, 644 F. Supp. 2d 1143, 1146 (D. Ariz. 2008) Citing *Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356, 362 (6th Cir.2002).

8. Credibility determinations are best handled by treating doctors rather than file reviewers. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 880 (6th Cir. 2006) (addressing file review: "[W]here, as here, however, the conclusions from that review include critical credibility determinations regarding a claimant's medical history and symptomology, reliance on such a review may be inadequate"); ("Defendant's reliance solely on file reviews…. is questionable in light of the critical credibility determinations made in those file reviews, the factual inaccuracies contained therein regarding plaintiff's treatment history, and the fact that the file reviews categorically dismissed the reliable opinion of plaintiff's treating physician…. Defendant has failed to provide a reasoned explanation based on the record and the express language of the LTD policy…").

9. In the light of these standards, the decisions by MetLife and the PBAC cannot be found to be the product of a deliberate, principled reasoning process. The rejection, and affirmations thereof, arbitrarily disregards significant medical evidence including reports from Williams' treating doctors and QME Dr. Weiss.

10. The favorable Social Security determination was not addressed or differentiated. While not bound by the decision, Metlife nor the PBAC made any significant mention of the contradictory Social Security disposition.

11. The file reviews dismiss the migraine diagnosis and credibility determination by multiple treating doctors who believe they are severe enough to render Williams unable to work. Dr. Gertenblitt and Dr. Varpetian relied on the absence of

       objective evidence, despite migraines being a clinical diagnosis based on subjective complaints and presentation that had been reported on by treating doctors.

12.   Dr. Varpetian cited anxiety as the culprit only by ignoring Doctor Cole's finding that Williams' mental health condition was derivative to her physical condition. Relying on this is tantamount to picking and choosing which medical records to rely upon. Further, Dr. Varpetian's findings, and the decisions based off his review, fail to explain why his credibility determination overrides that of a treating doctor.

For the foregoing reasons, the Court reverses the decision of the PBAC.

    The Court has the discretion to either remand the case for further consideration by the plan administrator or to simply order an award of benefits. *Bufonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005); *Pannebecker v. Liberty Life Assur. Co.*, 542 F3d. 1213 (9th Cir. 2008). Awarding benefits is only appropriate where a claimant has "clearly established that she is disabled under the plan." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007). In situations where the problem is with the decision-making, however, remand is the correct disposition. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir.2006). Thus, the Court remands this case to the PBAC for a decision in accordance with this opinion.

IT IS SO ORDERED

    Dated this 5th day of May, 2014.

                                    */s/ Ronald B. Leighton*

                              RONALD B. LEIGHTON
                              UNITED STATES DISTRICT JUDGE